## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Application of Biomet Orthopaedics Switzerland GmbH Under 28 U.S.C. § 1782 for an Order to Take Discovery for Use in a Foreign Proceeding | No. |

### BIOMET ORTHOPAEDICS SWITZERLAND GMBH'S APPLICATION UNDER 28 U.S.C. § 1782 FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING

Petitioner Biomet Orthopaedics Switzerland GmbH ("Biomet Switzerland") makes this application for an order pursuant to 28 U.S.C. § 1782 authorizing its attorneys to issue and serve subpoenas under Federal Rule of Civil Procedure 45 upon respondents Greenberg Traurig, LLP and Fineman Krekstein & Harris P.C., compelling them to produce documents for use in a pending foreign proceeding, *Heraeus Kulzer GmbH v. Biomet Switzerland, et al.*, No. 3 O 493/08 (Reg'l Ct. of Darmstadt, Ger. filed Dec. 30, 2008) (the "German Proceeding"). Biomet Switzerland is a defendant in the German Proceeding, originally along with Biomet, Inc. and certain of its European affiliates; the plaintiff is Heraeus Medical GmbH ("Heraeus"). In short, Heraeus alleges that Biomet Switzerland and other Biomet-related entities misappropriated Heraeus's trade secrets to develop certain bone cements that compete with various Heraeus's bone cements.

The respondents to this § 1782 application are two law firms that represent Esschem, Inc. ("Esschem") in a related lawsuit that Heraeus filed against Esschem in this Court, *Heraeus Medical GmbH v. Esschem, Inc.*, No. 2:14-cv-5169 (E.D. Pa. filed Sept. 8, 2014) (the "*Esschem* Litigation"). There, as in the German Proceeding, Heraeus alleges that Biomet misappropriated Heraeus's trade secrets and used them to develop competing bone cements. In the *Esschem*

Litigation, however, Heraeus seeks to hold Esschem liable for its purported role in the development process.

The materials Biomet Switzerland seeks through this application were produced to the respondent law firms in the *Esschem* Litigation and are highly relevant to defend against Heraeus's claims in the German Proceeding.

## THE RELATIONSHIP BETWEEN HERAEUS, THE BIOMET DEFENDANTS, AND ESSCHEM

1.      Heraeus and Biomet are medical-device companies that specialize in, among other things, the manufacture of bone cements. (Ex. C, Witz Decl. ¶ 5.) Bone cements like those manufactured by Heraeus or Biomet are synthetic compounds that are used in orthopedic surgery to keep joint implants securely in place. (*Id.*) Very broadly speaking, the bone cements at issue are made of two main components—a powder copolymer and a liquid monomer—that, when combined, first liquefy and then stabilize into a solid, hard substance that can effectively anchor artificial joint replacements in the body. (*Id.*)

2.      Prior to 2005, Heraeus manufactured bone cements for third parties pursuant to various supply agreements. These third parties distributed the bone cements to the market. As is relevant here, Heraeus manufactured bone cements for Merck KGaA ("Merck") from around 1972 to 1997 and then for a joint venture between Merck and Biomet, Inc. until around 2004, at which time Biomet, Inc. acquired 100% of the joint venture.

3.      Following Biomet, Inc.'s 2004 acquisition of the joint venture, the relationship between it and Heraeus soured. In August 2005, Heraeus stopped supplying bone cement to the former joint venture, now the Biomet group, after Heraeus had created its own distribution channels. Biomet, meanwhile, had developed its own bone cements to be able to fulfill its supply obligations to its customers. As part of this process, Biomet enlisted Esschem, a separate

company with vast experience developing and manufacturing copolymers used in medical and other products, to create the copolymers that Biomet would use in its new bone cements. Esschem—based on its own experience, knowledge, and equipment—was able to develop the copolymers Biomet requested and began supplying them to the company.

4.      This set of facts forms the basis for the current disputes between Heraeus, on the one hand, and Biomet Switzerland and other Biomet-related entities and Esschem, on the other.

## THE GERMAN PROCEEDING

5.      On December 30, 2008, Heraeus initiated the German Proceeding by filing a *Klage* (*i.e.*, a complaint) in the Regional Court of Darmstadt ("the Darmstadt court"). (*See* Grp. Ex. A, Biomet § 1782 Appl. ¶ 6, doc. 1 at pg. 2; Ex. B, Esschem § 1782 Appl. ¶ 2, doc. 1 at pg. 3.) Heraeus named as defendants Biomet, Inc., Biomet Switzerland, Biomet Europe B.V. ("Biomet Europe"), and Biomet Deutschland GmbH ("Biomet Germany") (collectively, the "Biomet Defendants").[1] (Grp. Ex. A, *Klage* (Eng. trans.), doc. 1-5 at pgs. 9–10.)

6.      In the German Proceeding, Heraeus claims that the Biomet Defendants, through the prior joint venture with Merck, as well as Biomet's cooperation with Heraeus in joint development projects and their supply relationship, acquired Heraeus's purported trade secrets, consisting of "comprehensive information about the composition of Heraeus'[s] bone cement products, as well as the know-how required for testing and producing its bone cement products." (Grp. Ex. A, First Klinkert Decl. ¶ 5, doc. 1-2 at pg. 7.) According to Heraeus, these purported trade secrets include the following:

---

[1] Heraeus also sued Merck KGaA and aap Biomaterials GmbH & Co. KG, both of which were later removed from the case, and two employees of Biomet's European subsidiaries. (Grp. Ex. A, *Klage* (Eng. trans.), doc. 1-5 at pgs. 9–10.) For ease of reference, this application will focus on the Biomet Defendants as defined above.

> (1) specifications for the raw materials in the composition, including optimal characteristics for each raw material which have been identified by Heraeus after years of testing and experimentation, (2) specific test protocols developed by Heraeus to insure compliance with the specifications during manufacturing and overall quality of the final product, and (3) mixing protocols that, again, were developed over the years by Heraeus.

(*Id.*)   This information, Heraeus alleges, is "essential to obtain bone cement products that perform as required," (*id.*), and without it, Biomet never would have been able to develop bone cements with properties substantially equivalent to Heraeus's products, (*id.* at ¶¶ 14–15, doc. 1-2 at pg. 9; *see also* Grp. Ex. A, *Klage* (Eng. trans.), doc. 1-6 at pgs. 18–19).

7.     In the German Proceeding, Heraeus further claims that Biomet used Heraeus's trade secrets to guide Esschem's development and manufacture of the copolymers included in certain of Biomet's bone cements.  (*See, e.g.*, Grp. Ex. A, First Klinkert Decl. ¶ 16, doc. 1-2 at pgs. 9–10; Ex. B, Esschem § 1782 Appl. ¶¶ 35–36, doc. 1 at pg. 11.)

8.     The manner in which Heraeus pleaded its claims in the German Proceeding can best be described as follows.  Against the Biomet Defendants, Heraeus primarily seeks injunctive relief and a declaration that the Biomet Defendants are liable for damages, both based on the alleged misappropriation of Heraeus's bone-cement trade secrets.  (Ex. C, Witz Decl. ¶ 7.)

9.     In addition to these claims against all Biomet Defendants, Heraeus seeks relief against Biomet Switzerland based on its role as the "responsible manufacturer" of the bone cements at issue.  (Ex. C, Witz Decl. ¶ 8.)  As a matter of European law, a "responsible manufacturer" must be designated to bring any medical device or product into market circulation.  (*Id.*)  The law further requires responsible manufactures to obtain or comply with certain regulatory certification, registration, and licensing requirements.  (*Id.*)  Biomet Switzerland is the responsible manufacturer that maintains the certification documents for the Biomet bone cements at issue.  (*Id.*)  Accordingly, with respect to Biomet Switzerland only,

Heraeus seeks, first, an order requiring Biomet Switzerland to surrender its certification documents so that Heraeus can inspect them (the "certification-surrender claim") and, second, an order requiring Biomet Switzerland to waive its rights as the responsible manufacturer under the certification documents (the "certification-waiver claim"). (*Id.*)

10.     Based on the manner in which Heraeus pleaded its claims, and German procedural law, the German Proceeding was structured into two stages. (Ex. C, Witz Decl. ¶ 9.) In the first stage, the Darmstadt court would hear: (i) the claims against Biomet, Inc., Biomet Europe, and Biomet Germany for injunctive relief and a declaration of liability for damages, based on the alleged misappropriation of trade secrets; and (ii) the certification-surrender claim against Biomet Switzerland. (*Id.*) In the second stage, the Darmstadt court would hear: (i) the claim against Biomet Switzerland for the same injunctive relief and declaration of liability, based on the same allegations of trade-secret misappropriation; and (ii) the certification-waiver claim against Biomet Switzerland. (*Id.*)

### HERAEUS'S § 1782 DISCOVERY ACTIONS AGAINST BIOMET AND ESSCHEM, AND USE IN THE GERMAN PROCEEDING OF INFORMATION HERAEUS OBTAINED FROM THEM

11.     Seeking to obtain evidence for the German Proceeding, in 2009 Heraeus filed discovery applications against Biomet, Inc., Biomet Orthopedics, LLC, and Esschem under 28 U.S.C. § 1782. *See In re Heraeus Kulzer GmbH*, No. 09-0530 (N.D. Ind. filed July 21, 2009); *In re Heraeus Kulzer GmbH*, No. 09-0017 (E.D. Pa. filed Jan. 29, 2009).[2] With respect to Biomet, Inc. and Biomet Orthopedics, LLC, Heraeus sought 16 broad categories of documents and testimony from a corporate representative about a variety of topics. (Resps. & Objs. to Heraeus's Doc. Reqs., *In re Heraeus Kulzer GmbH*, No. 09-0530 (N.D. Ind. Mar. 1, 2011), ECF

---

[2] Heraeus filed those applications in the United States District Courts for the Northern District of Indiana (for Biomet, Inc. and Biomet Orthopedics, LLC) and the Eastern District of Pennsylvania (for Esschem).

No. 61-3; Op. & Order, *In re Heraeus Kulzer GmbH*, No. 09-0530 (N.D. Ind. Aug. 6, 2011), ECF No. 84 at pgs. 3–4 (discussing first 30(b)(6) deposition); Op. & Order, *In re Heraeus Kulzer GmbH*, No. 09-0530 (N.D. Ind. Aug. 6, 2011), ECF No. 116 (discussing second 30(b)(6) deposition).)   As for Esschem, Heraeus requested five broad categories of documents and testimony from a corporate representative on various topics.   (Esschem Subpoena, *In re Heraeus Kulzer GmbH*, No. 09-0017 (E.D. Pa. Mar. 27, 2009), ECF No. 5 at pgs. 22–26; Memo. Op. & Order, *In re Heraeus Kulzer GmbH*, No. 09-0017 (E.D. Pa. Aug. 2, 2011), ECF No. 82 at pgs. 5–6 (discussing 30(b)(6) deposition).)

12.    In support of its § 1782 discovery applications, Heraeus argued, among other things, that: (i) the requested discovery was relevant—indeed critical—to its claims of trade-secret misappropriation in the German Proceeding; (ii) Heraeus could not obtain such broad, U.S.-style discovery under German procedure;[3] and (iii) Heraeus's discovery applications satisfied § 1782's statutory requirements and the factors the Supreme Court has instructed district courts to consider when deciding whether to allow § 1782 discovery.   (*See generally* Grp.

---

[3] In an affidavit from its counsel in the German Proceeding, for example, Heraeus described how the ability to obtain information from one's opponent in a civil case is far narrower in Germany than in the United States:

> In a German litigation, Heraeus does not have a formalized means to request and subsequently obtain information from the other party, in particular, there is no mechanism for pre-trial discovery.   The German Civil Procedure Code (ZPO) merely provides that a party may request that the other party or a third party be ordered to present a certain, specifically-identified document, however, there are no procedural means in a German trade secret case to seek general discovery of the internal documents of the other party as evidence for a litigation.   Therefore, if information is uniquely within the knowledge and possession of the other party, it cannot be obtained under German civil procedure rules.   Moreover, documents located in the United States are outside the jurisdictional reach of German courts.

(Grp. Ex. A, First Klinkert Decl. ¶ 27, doc. 1-2 at pg. 12; *see also* Grp. Ex. A, Biomet § 1782 Appl. ¶ 46, doc. 1 at pg. 11.)

Ex. A, Biomet § 1782 Appl. ¶¶ 28–70, doc. 1 at pgs. 7–16; Ex. B, Esschem § 1782 Appl. ¶¶ 28–43, doc. 1 at pgs. 9–13.)

13.     Both the Seventh and Third Circuit Courts of Appeals agreed with Heraeus and held that it was entitled to § 1782 discovery for use in the German Proceeding. *See generally Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011); *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88 (3d Cir. 2010).   Indeed, both courts stated that Heraeus had presented a "textbook" case for such discovery. *See Biomet*, 633 F.3d at 597; *Esschem*, 390 F. App'x at 92.

14.     As a result of the Seventh Circuit's and Third Circuit's decisions, Biomet, Inc., Biomet Orthopedics, LLC, and Esschem produced thousands of pages of documents, and provided deposition testimony from multiple witnesses, to Heraeus. (*See supra* ¶ 11 at pgs. 5–6.)

15.     Heraeus, in turn, submitted portions of that discovery to the Darmstadt court to support its claims in the first stage of the German Proceeding. (Ex. C, Witz Decl. ¶ 10.)   The court accepted the material without reservation. (*Id.*)

16.     On December 20, 2012, the Darmstadt court ruled against Heraeus in the first stage of the proceeding. (Ex. C, Witz Decl. ¶ 12.)   The court rejected Heraeus's certification-surrender claim against Biomet Switzerland and its trade-secret misappropriation claims against Biomet, Inc., Biomet Europe, and Biomet Germany. (*Id.*)   Given the staging of proceedings, the Darmstadt court did not address the certification-waiver or the trade-secret misappropriation claims against Biomet Switzerland. (Ex. C, Witz Decl. ¶¶ 9, 12.)   Those specific claims would be litigated in the next stage of the case. (*Id.*)

17.     Heraeus appealed the December 20, 2012 ruling to the Frankfurt Court of Appeals. (Ex. C, Witz Decl. ¶ 13.)   On June 5, 2014, the Frankfurt Court of Appeals issued its

opinion, affirming in part and reversing in part the decision below. (*Id.*)  In short, the Frankfurt Court of Appeals: (i) affirmed the decision rejecting Heraeus's certification-surrender claim against Biomet Switzerland; (ii) reversed the decision with respect to Heraeus's misappropriation claims against Biomet, Inc., Biomet Europe, and Biomet Germany; and (iii) ruled that Biomet, Inc., Biomet Europe, and Biomet Germany had misappropriated certain of Heraeus's alleged trade secrets (the "German Judgment").[4]  (*Id.*)  According to the Frankfurt Court of Appeals, Biomet used Heraeus's alleged trade secrets to, among other things, guide Esschem's development of the copolymers included in certain of Biomet's competing bone cements. (*Id.*)

18.     In rendering the German Judgment, the Frankfurt Court of Appeals explicitly relied on, and even quoted, documents that Heraeus received from Biomet, Inc. and Biomet Orthopedics, LLC as part of the previous § 1782 proceedings. (Ex. C, Witz Decl. ¶ 14.)  The court also stated that Heraeus's use of evidence obtained from the prior § 1782 proceedings was consistent with German law. (*Id.*)

19.     In the German Proceeding, none of the Biomet Defendants received discovery from Heraeus. (*See* Ex. C, Witz Decl. ¶ 11.)

## THE *ESSCHEM* LITIGATION IN THIS COURT

20.     On September 8, 2014, approximately three months after the German Judgment, Heraeus filed the *Esschem* Litigation. (Ex. D, Esschem Compl.); *see generally Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. filed Sept. 8, 2014).  Heraeus's complaint against Esschem contains the same general set of allegations that make up its case against the Biomet Defendants, including Biomet Switzerland, in the German Proceeding. (Ex. C, Witz Decl.

---

[4] Under German law, the German Judgment is not a public document.  Accordingly, Biomet Switzerland has not submitted it with this application.  Heraeus, however, has submitted it under seal to this Court previously. (*See, e.g.,* Pl.'s Opening Pre-Hearing Br. at Ex. 1, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. Apr. 4, 2016), ECF Nos. 219 (redacted version) & 220 (sealed version).)

¶¶ 19–20; *see also* Order Adopting Special Disc. Master's R. & R. No. 4, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. Apr. 4, 2016), ECF No. 152 at pg. 13 (noting that "the heart of the allegations in [the German Proceeding]" were also "inextricably involved in [the *Esschem* Litigation]").)   Both actions center around Heraeus's claim that Biomet misappropriated Heraeus's trade secrets to create a competing line of bone cements, including using those trade secrets to guide Esschem's development of the necessary copolymers. (*Compare* Grp. Ex. A, Biomet § 1782 Appl. ¶¶ 9–27, doc. 1 at pgs. 2–7 (summarizing allegations in *Klage*), *with* Ex. D, Esschem Compl. ¶¶ 7–60; *see also* Ex. C, Witz Decl. ¶¶ 19–20.)   Indeed, in its complaint against Esschem, Heraeus defines its purported trade secrets the same way it has in the German Proceeding:

> (1) specifications for the raw materials in the composition, including optimal characteristics of each raw material, that have been identified by Heraeus after years of testing and experimentation, *e.g.*, water content, particle size distribution, inherent viscosity, and BPO content of the copolymers; (2) specific test protocols developed by Heraeus to insure compliance with these specifications during manufacturing and overall quality of the final product; and (3) mixing protocols that, again, were developed over the years by Heraeus.

(Ex. D, Esschem Compl. ¶ 12; *accord* Grp. Ex. A, First Klinkert Decl. ¶ 5, doc. 1-2 at pg. 7 (summarizing *Klage*).)

21.   The only practical difference between the German Proceeding and *Esschem* Litigation is that in the *Esschem* Litigation, instead of seeking damages and an injunction against the Biomet Defendants for allegedly misappropriating Heraeus's trade secrets and using them to develop and manufacture a competing line of bone cements, Heraeus seeks damages and an injunction against Esschem for its knowledge of, and role in, that purported scheme.   (*Compare* Grp. Ex. A, *Klage* (Eng. trans.), doc. 1-7 at pgs. 1–8, *with* Ex. D, Esschem Compl. ¶¶ 72–101.)   Indeed, as Heraeus itself explained to this Court in the *Esschem* Litigation, the case against Esschem "concerns the same parties and grows out of the same transaction and conduct" as the

German Proceeding.  (Designation Form, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. Apr. 4, 2016), ECF No. 1-3; *see also* Pl.'s Mot. for a Continuance and Leave to Amend, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. Sept. 8, 2014), ECF No. 305 at pg. 11 & n.5 (stating that the German Proceeding is "related" to the *Esschem* Litigation and that both cases "inextricably involve[]" a common set of allegations).)

22.     Esschem has vigorously disputed Heraeus's allegations, including that: (i) Heraeus has valid and protectable trade secrets regarding the bone cements at issue and their component parts, including copolymers; (ii) the specifications for the copolymers in Biomet's bone cements match those in Heraeus's bone cements; and (iii) Esschem could not, and did not, develop the copolymers at issue without use of Heraeus's alleged trade secrets.  (*See, e.g.*, Grp. Ex. E, Esschem's Motions for Sanctions.)   As part of discovery, Esschem has requested and obtained documents, interrogatory responses, and deposition testimony to support its defenses. (*See, e.g.*, Special Disc. Master's R. & R. No. 8, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. July 18, 2016), ECF No. 271 (discussing Esschem's discovery efforts); Special Disc. Master's R. & R. No. 11, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. Feb. 24, 2017), ECF No. 345 (same).)

23.     Given the overlap of both Heraeus's factual allegations and its arguments in the German Proceeding and the *Esschem* Litigation, the discovery materials Esschem received in the *Esschem* Litigation are highly relevant to Biomet Switzerland's defenses in the German Proceeding, including the defenses that Heraeus does not have protectable trade secrets under German law and that the copolymers in Biomet's cements do not match those in Heraeus's cements.  (*See, e.g.*, Ex. C, Witz Decl. ¶¶ 19–25.)

24.     For example, from publicly available filings, Biomet Switzerland has learned that Esschem obtained discovery apparently showing that, despite Heraeus's claim that there is something special and critically important to its copolymer specifications deserving trade-secret protection, Heraeus (i) changed its specifications numerous times during the relevant period, and (ii) may not be using the supposed trade-secret specifications any longer.    (Grp. Ex. E, Esschem's Motions for Sanctions; *see also* Ex. C, Witz Decl. ¶ 23.)   Additionally, it appears that Heraeus tested Biomet's bone cements and the results showed, contrary to Heraeus's claims, that the copolymers in Biomet's bone cements are different from those in Heraeus's cements.   (Grp. Ex. E, Esschem's Motions for Sanctions; *see also* Ex. C, Witz Decl. ¶ 24.)

25.     This type of discovery is critical to Biomet Switzerland's defenses in the German Proceeding.   (Ex. C, Witz Decl. ¶¶ 19–20.)   Indeed, Biomet Switzerland would be severely prejudiced without it.   (Ex. C, Witz Decl. ¶ 25.)

## BIOMET SWITZERLAND'S NEED FOR ASSISTANCE FROM THIS COURT

26.     The second stage of the German Proceeding against Biomet Switzerland— encompassing Heraeus's certification-waiver and trade-secret claims against the company—is currently being litigated.   (Ex. C, Witz Decl. ¶¶ 16–18.)   Under governing law, the June 5, 2014 German Judgment against Biomet, Inc., Biomet Europe, and Biomet Germany is not binding or preclusive upon Biomet Switzerland.   (Ex. C, Witz Decl. ¶ 17.)   Heraeus must prove anew its allegations of trade-secret misappropriation, including its allegation that Biomet used Heraeus's trade secrets to guide Esschem's development of the copolymers included in the Biomet bone cements at issue.   (*Id.*)   For its part, Biomet Switzerland may present all factual and legal defenses, and may offer new evidence to support such defenses.   (*Id.*)

27.     An oral hearing is currently scheduled for November 24, 2017, in the second stage of the German Proceeding.   (Ex. C, Witz Decl. ¶ 18.)   From pleadings filed in the case, it is

clear that Heraeus intends to rely on, among other things, the evidence it previously submitted to the Darmstadt court from the prior § 1782 actions (which is already part of the court record). (*Id.*)

28.     As already noted, and as explained below, under German law Biomet Switzerland has no ability to obtain the critical discovery it needs to defend against Heraeus's claims. That is why Biomet Switzerland filed this application for discovery under § 1782. Heraeus previously used that statute to obtain discovery from Biomet, Inc., Biomet Orthopedics, LLC, and Esschem. There is no legitimate reason Biomet Switzerland also should not be able to utilize § 1782 to obtain evidence for use in the very same German Proceeding.

### THE § 1782 STATUTORY REQUIREMENTS ARE SATISFIED HERE

29.     Title 28 U.S.C. § 1782 authorizes this Court to order any person in the Eastern District of Pennsylvania to produce documents or provide testimony for use in a foreign proceeding upon the application of any person with an interest in that proceeding. Specifically, § 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and . . . [t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

30.     As the Third Circuit has explained, "[s]ection 1782 imposes three fundamental requirements for a discovery subpoena: (1) the person from whom discovery is sought must reside in the district; (2) the discovery must be for use in proceedings before a foreign tribunal; and (3) the application can be made either by the foreign tribunal or by an interested party."

*Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010).  "A proceeding includes any proceeding in which an adjudicated function is being exercised or is imminent.  An interested person includes a party to the foreign litigation, whether directly or indirectly."  *Id.* (quoting *In re Merck & Co.*, 197 F.R.D. 267, 270 (M.D.N.C. 2000)).  There can be no question that Biomet Switzerland's application satisfies each statutory requirement.

31.     ***First***, the proposed subpoenas seek discovery materials from Greenberg Traurig and Fineman Krekstein, two law firms with offices in Philadelphia.  (Greenberg Traurig, Locations, Philadelphia, https://www.gtlaw.com/en/locations/philadelphia (last visited Sept. 8, 2017); Fineman Krekstein, Contact Us, https://www.finemanlawfirm.com/contact-us (last visited Sept. 8, 2017)); *see also* 28 U.S.C. § 1782 (granting courts the power to order discovery from any person who "resides or is found" in the district).  Courts in the Eastern District of Pennsylvania, as well as those throughout the country, have held that a law firm "resides or is found in" a district for purposes of § 1782 if it has offices in that district, even if the § 1782 application seeks documents related to the firm's representation of a client residing outside the district.[5]  *See, e.g.*, *In re Chevron Corp.*, Nos. 10-0208 & 10-0209, 2010 WL 5173279, *4 (E.D. Pa. Dec. 20, 2010) (section 1782 application to attorney and law firm located in Philadelphia found to satisfy statutory requirements), *rev'd on other grounds*, 650 F.3d 276 (3d Cir. 2011); *In re Republic of Kazakhstan*, 110 F. Supp. 3d 512, 518 (S.D.N.Y. 2015) (granting § 1782 application directed to law firm located in judicial district); *In re Chevron Corp.*, No. 10-0371, 2013 WL 11241413, *2 (D.D.C. Apr. 22, 2013) (court previously granted § 1782 applications directed to two law firms located in judicial district).

---

[5] This is beside the point, however, because here the respondents' client, Esschem, also resides in this district.  *Esschem*, 390 F. App'x at 90; *see also U.S. Philips Corp. v. Iwasaki Elec. Co.*, 142 F. App'x 516, 517–18 (2d Cir. 2005) (affirming order requiring production of client documents in law firm's possession because "both client and counsel are in" the district).

32.   *Second*, the proposed subpoenas seek materials for use in the pending German Proceeding, which, as detailed above, is a German civil action in which Heraeus has asserted against Biomet Switzerland claims of trade-secret misappropriation, among other things. *Esschem*, 390 F. App'x at 92–93 (allowing Heraeus to obtain § 1782 discovery from Esschem in connection with the same German Proceeding); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 599 (7th Cir. 2011) (same with respect to discovery from Biomet, Inc. and Biomet Orthopedics, LLC).

33.   *Third*, Biomet Switzerland is an "interested person" because it is the defendant in the German Proceeding.   (Grp. Ex. A, *Klage* (Eng. trans.), doc. 1-5 at pg. 9); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) ("[n]o doubt litigants are included among, and may be the most common example of, the 'interested person' who may invoke § 1782"); *see also Esschem*, 390 F. App'x at 89; *Biomet*, 633 F.3d at 595.

## THE DISCRETIONARY *INTEL* FACTORS SUPPORT THE § 1782 APPLICATION

34.   Because Biomet Switzerland has met § 1782's three statutory requirements, this Court has the discretion to—and should—grant Biomet Switzerland's discovery application.

35.   The Supreme Court has identified four factors, oftentimes referred to as the *Intel* factors, that a district court may consider when determining whether to exercise its discretion and grant a § 1782 discovery application: "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; [and] (4) whether the subpoena contains

unduly intrusive or burdensome requests." *In re O'Keefe*, 646 F. App'x 263, 266 (3d Cir. 2016) (citing *Intel*, 542 U.S. at 264–65); *see also Esschem*, 390 F. App'x at 91 (same).

36.     In exercising their discretion, federal courts, including the Third Circuit, have given "consistently liberal interpretation" to § 1782 and its objective "'to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.'" *See Esschem*, 390 F. App'x at 92 (quoting *Intel*, 542 U.S. at 262).

37.     As established below, each of the four *Intel* factors favor the exercise of this Court's discretion to grant Biomet Switzerland's discovery application.

**Neither Esschem nor Its Counsel Is a Party to the German Proceeding.**

38.     The first *Intel* factor considers whether the person from whom discovery is sought is a party to the foreign proceeding.  As a general matter, "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for" § 1782 discovery "is not as apparent as it ordinarily is when evidence is sought from a nonparticipant [that] may be outside the foreign tribunal's jurisdictional reach." *Intel*, 542 U.S. at 264.

39.     Here, Biomet Switzerland seeks discovery from Esschem's counsel, Greenberg Traurig and Fineman Krekstein.  They are not parties to the German Proceeding, (Grp. Ex. A, *Klage* (Eng. trans.), doc. 1-5 at pgs. 9–10), and are not subject to the Darmstadt court's jurisdiction, (Grp. Ex. A, First Klinkert Decl. ¶ 27, doc. 1-2 at pg. 12; *see also* Grp. Ex. A, Biomet § 1782 Appl. ¶ 46, doc. 1 at pg. 11).  Accordingly, the Darmstadt court cannot order Greenberg Traurig or Fineman Krekstein to produce to Biomet Switzerland any of the requested materials.  This is a "compelling" reason to grant Biomet Switzerland's discovery application. *See Esschem*, 390 F. App'x at 92 (§ 1782 applications directed to parties "outside the foreign tribunal's reach" are "more compelling" because evidence might otherwise be "unobtainable").

40.    It is worth noting that even if Greenberg Traurig and Fineman Krekstein were parties to the German Proceeding or subject to the Darmstadt court's jurisdiction, Biomet Switzerland still would need § 1782 discovery assistance.  As Heraeus previously argued in support of its separate § 1782 applications directed at Biomet, Inc., Biomet Orthopedics, LLC, and Esschem, "the German Civil Procedure Code ("ZPO") does not incorporate the concept of discovery as it is understood in U.S. Procedure.  It is a concept unknown in German civil practice." (Grp. Ex. A, Biomet § 1782 Appl. ¶ 44, doc. 1 at pg. 11 (internal citations omitted).)

41.    While German procedure does allow a litigant to request that its adversary or a non-party produce a certain, specifically-described document (*e.g.*, the contract between Acme and Beta corporations, dated January 1, 2000, covering the supply of widgets), German procedure does not provide for document requests seeking "categories" of materials, which are commonplace in U.S. litigation.  (*Id.*); s*ee also Biomet*, 633 F.3d at 596 (7th Cir. 2011) ("A party to a German lawsuit cannot demand categories of documents from his opponent.")

42.    For these reasons, the first *Intel* factor supports Biomet Switzerland's application.

**The Darmstadt Court Presiding over the German Proceeding Already Has Accepted Evidence that Heraeus Received from Biomet and Esschem Through Separate § 1782 Proceedings.**

43.    Application of the second *Intel* factor—consideration of the foreign tribunal and its receptivity to U.S. federal-court discovery assistance—could not be more straightforward.  As explained above, the Darmstadt court hearing the German Proceeding against Biomet Switzerland has already accepted evidence that Heraeus obtained as part of the separate § 1782 proceedings.  (Ex. C, Witz Decl. ¶¶ 10, 18.)

44.    The same is true for the Frankfurt Court of Appeals.  It accepted evidence from Heraeus's earlier § 1782 proceedings and relied on that evidence in rendering the German Judgment, even quoting from certain documents that Biomet produced to Heraeus.  (Ex. C, Witz

Decl. ¶ 14.)  Moreover, in the German Judgment, the Frankfurt Court of Appeals explicitly stated that Heraeus's use of evidence obtained through § 1782 proceedings in the United States was consistent with German law.  (*Id.*)

45.     These facts alone prove that the Darmstadt court is "receptive" to the type of material that Biomet Switzerland seeks to obtain through the proposed subpoenas.[6]  Accordingly, the second *Intel* factor supports Biomet Switzerland's application.

### Biomet Switzerland's Proposed Subpoenas Are Not Attempts to Circumvent Any German Proof-Gathering Restrictions.

46.     The third *Intel* factor asks whether the § 1782 "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.[7]  Here, the answer to that question is "no."

47.     In one of its § 1782 discovery applications directed at Biomet, Inc. and Biomet Orthopedics, LLC seeking materials for use in the German Proceeding, Heraeus argued that the third *Intel* factor favored its requested discovery because "Germany has no . . . proof-gathering restrictions":

> Germany has no such proof-gathering restrictions.  German courts are required to admit the evidence offered by a party without regard to its origin, unless that evidence was obtained in violation of basic rights, such as when torture is used to obtain a signed statement or a telephone conversation is recorded without prior consent.

_____

[6] Even before Heraeus was able to obtain § 1782 discovery from Biomet, Inc., Biomet Orthopedics, LLC, and Esschem, and before the German courts received such discovery as part of the German Proceeding, both the Third and Seventh Circuits noted Germany's receptivity to § 1782 discovery.  *See Esschem*, 390 F. App'x at 92 (stating that Esschem had not effectively rebutted Heraeus's representation that "the German court does not restrict receipt of the evidence sought" through § 1782); *Biomet*, 633 F.3d at 596 ("[t]here is no indication that the German court in which Heraeus's suit against Biomet is pending would refuse to admit evidence that Heraeus obtained through U.S. [§ 1782] discovery and could not have obtained by utilizing the procedures of German law for evidence gathering").

[7] Proof-gathering restrictions, as that phrase is used in *Intel*, "are best understood as rules akin to privileges that ***prohibit*** the acquisition or use of certain materials, rather than as rules that ***fail to facilitate*** investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information."  *See Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (emphasis in original).

> In addition, the ZPO [the German Civil Procedure Code] contemplates that petitions may be filed abroad to seek evidence from foreign countries. One of Germany's leading legal commentators has specifically opined that a petition under § 1782 is an appropriate vehicle for obtaining evidence under the ZPO.

> This factor weighs in favor of granting Heraeus' Petition.

(Grp. Ex. A, Biomet § 1782 Appl. ¶¶ 56–58, doc. 1 at pg. 13.)

48.    The Seventh Circuit agreed with Heraeus's position and held it was "serious legal error[]" for the district court to find that Heraeus was using § 1782 to circumvent German procedure and obtain evidence that Heraeus could not obtain under German law. *See Biomet*, 633 F.3d at 597 ("In denying Heraeus's application the district court committed two serious legal errors that vitiate its exercise of discretion in applying § 1782. The first was to conclude that Heraeus was seeking to circumvent German law."). Heraeus's subpoenas in that proceeding sought 16 broad categories of documents and a corporate-representative deposition covering a variety of topics. (*See supra* ¶ 11 at pgs. 5–6.)

49.    The Seventh Circuit went on to explain that there is "nothing to suggest that the German court would be affronted by Heraeus's recourse to" § 1782:

> Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced.

*Biomet*, 633 F.3d at 597.

50.    Similarly, the Third Circuit, when addressing Heraeus's § 1782 application directed at Esschem, stated that while Germany's rules do not permit a litigant access to the same types of information available under U.S. discovery, "the German court [hearing the German Proceeding] does not restrict receipt of the evidence sought." *See Esschem*, 390 F. App'x at 92 ("We can quickly address whether most of the *Intel* factors are met here: they are."); *see also*

*Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 624 (8th Cir. 2016) (explaining that Germany has no general restrictions on litigants' ability to use documents obtained outside the strictures of German procedure); *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) (same).

51.     If Heraeus was not attempting to circumvent German procedure when it sought § 1782 discovery from Biomet, Inc., Biomet Orthopedics, LLC, and Esschem for use in the German Proceeding, then—by definition—Biomet Switzerland is not attempting to do so either.

52.     The third *Intel* factor supports Biomet Switzerland's application.

**The Proposed Subpoenas Are Not Unduly Intrusive or Burdensome.**

53.     Regarding the final *Intel* factor, it would be difficult to imagine document requests that are less intrusive or burdensome than the ones contained in the proposed subpoenas. The subpoenas ask Greenberg Traurig and Fineman Krekstein to produce to Biomet Switzerland the documents, written discovery responses, and deposition transcripts received in discovery in the *Esschem* Litigation.   (Grp. Ex. F, Proposed Subpoenas.)   Those materials—which are relevant to defend against Heraeus's claims that Biomet Switzerland misappropriated Heraeus's trade secrets, including Heraeus's claim that it has protectable trade secrets in the first instance[8]—have already been collected, reviewed for privilege, bates numbered, and produced, whether voluntarily or subject to court order, as part of the *Esschem* Litigation.   Accordingly, all

---

[8] As noted above, Heraeus freely, and often, argues the substantial factual overlap between the German Proceeding and the *Esschem* Litigation. (*See, e.g.,* Designation Form, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. Sept. 8, 2014), ECF No. 1-3 (affirming that the *Esschem* Litigation "concerns the same parties and grows out of the same transaction and conduct" as the German Proceeding); Pl.'s Mot. for a Continuance and Leave to Amend, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169 (E.D. Pa. Apr. 4, 2016), ECF No. 305 at pg. 11 & n.5 (stating that the German Proceeding is "related" to the *Esschem* Litigation and that both cases "inextricably involve[]" a common set of allegations).)

Greenberg Traurig or Fineman Krekstein need to do is transmit a set of the materials to Biomet Switzerland.[9]  There will be no intrusion or burden associated with such a limited task.

54.     To the extent there are concerns about the materials at issue being confidential, Biomet Switzerland will enter into an appropriate protective order as part of this § 1782 proceeding.  That is what Heraeus offered to do, and did, in the § 1782 proceedings from which it previously obtained documents from Biomet, Inc., Biomet Orthopedics, LLC, and Esschem. (*See* Grp. Ex. A, Draft Protective Order, doc. 1-12 at pgs. 1–11; Eighth Am. Protective Order, *In re Heraeus Kulzer GmbH*, No. 09-0530 (N.D. Ind. Oct. 18, 2015), ECF No. 192 (current version); Ex. B, Esschem § 1782 Appl. ¶¶ 39–43, doc. 1 at pgs. 12–13 (discussing draft protective order); Am. Protective Order, *In re Heraeus Kulzer GmbH*, No. 09-0017 (E.D. Pa. Aug. 26, 2011), ECF No. 87 (current version).)

55.     Accordingly, the fourth *Intel* factor, like the previous three, supports Biomet Switzerland's application.

## CONCLUSION

For the foregoing reasons, Biomet Switzerland respectfully requests that the Court (i) grant its application for discovery under 28 U.S.C. § 1782, (ii) issue the subpoenas attached as Group Exhibit F, and (iii) grant Biomet Switzerland all further relief that the Court deems appropriate and just.

---

[9] Biomet Switzerland is not looking for Greenberg Traurig and Fineman Krekstein to produce duplicative materials.  If one firm has a complete set of the requested materials, then it can make the production.

Dated: September 12, 2017

Respectfully submitted,

Calli J. Padilla
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
215.665.2000
215.253.6777 facsimile
cpadilla@cozen.com

*Counsel for Biomet Orthopaedics
Switzerland GmbH*